[No. 2129.]

## THOMAS KING *v.* THE STATE.

BURGLARY WITH INTENT TO RAPE—FRAUD—CHARGE OF THE COURT.—In a prosecution for burglary with intent to commit rape, the trial court charged the jury, upon the question of fraud, that the "fraud must consist in the use of some strategem, as an attempt to have carnal intercourse with a woman when she is asleep." *Held*, error, in as much as it announces, in effect, that an attempt to have carnal intercourse with a woman when she is asleep *per se* constitutes fraud within the meaning of the statute. This statute (Art. 531 of the Penal Code) was enacted solely for the protection of married women and declares that the fraud must consist in the use of some strategem by which the woman is induced to believe that the offender is her husband. See the opinion on the question and note that the evidence fails to show that the injured party in this case was a married woman.

APPEAL from the District Court of Red River. Tried below before the Hon. D. H. Scott.

The conviction in this case was for the burglary of the house of one Alice Johnson, with intent to rape the said Alice Johnson, in Red River county, Texas, the eighteenth day of October, 1886. A term of two years in the penitentiary was the penalty assessed against the appellant.

Alice Johnson was the first witness for the State. She testified that, on the night of October, 18, 1886, the defendant raised the window of the house in which she was living, entered the house, and got in the bed in which she was sleeping and attempted to ravish her. The witness was asleep when he entered the room and got into her bed. He had pulled up her clothes and was proceeding to insert his male member into her sexual organ when she awoke. She sprang out of bed as soon as she realized the defendant's presence, hallooed at him, and he desisted. Witness then lit a lamp and ran to the house of a Mr. Craig, one of her neighbors, to report the assault and ask for protection. Finding Mr. Craig absent, she returned and found the defendant still standing in the door, which she had opened. She grasped a piece of broom stick and struck at defendant. He avoided the blow and left, and witness saw him no more on that night. Early on the next morning witness reported the fact to Mr. Craig, and as soon as she got breakfast she went to Esquire Stanley and reported.

C. B. Craig testified, for the State, that the prosecutrix, Alice Johnson, lived on his place, occupying a room about twenty yards from his dwelling house. On the morning after the alleged burglary and assault, the said Alice Johnson told witness and his wife that the defendant, at some hour of the night, pushed open the window of her room, and entered her room through the said window, and got into her bed; that she awoke, pushed him and hallooed, and that he thereupon sprang out of the room through the window, and escaped, and that she recognized him as he went out of the window. At the same time Alice told the witness that she went to his house and called for him just after the assault upon her, but she said nothing about the defendant attempting to ravish her.

Five different witnesses for the State, one of whom was a physician, testified that they had long known the defendant, and that, basing their judgment of the defendant's mental condition upon that acquaintance, they considered him mentally as sound as the average negro, and possessed of sufficient knowledge and understanding to know right from wrong. The State closed.

Caroline King was the first witness for the defense. She testified that the defendant was her son, and was nineteen years old. The witness and the other members of her family had always considered the defendant an idiot. He left home at an early age and went to town. His father would often go to town,

take him back home, and chastise him with little or no mercy, but could never make him stay at home or work. Defendant never learned to perform other than the very simplest tasks of work.

William King was the defendant's next witness. He testified that he and the defendant were brothers. The witness had always regarded the defendant as an idiot, and knew that he was so regarded by the other members of the family. It had been impossible to teach the defendant to do any kind of farm work, although strenuous efforts to teach him had been made. His father had resorted to an excessive use of the whip, but could do nothing with him about work. The defendant had never been able to learn his letters, nor had he ever been able to learn to count five. The witness had, time and time again, attempted to teach defendant to count. He had arranged corn and other such objects in rows, but had never been able to teach defendant to master numerals to the extent of five.

Amos McCulloch and John McCulloch were the next witnesses, in the order named, for the defense. They testified that they had known the defendant long and intimately. Judging of his mental capacity by their acquaintance with him, the witnesses pronounced him to be mentally very weak, and utterly incapable of distinguishing wrong from right.

The motion for new trial raised the questions discussed in the opinion.

*A. J. Taylor*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Willson, Judge. In explaining to the jury the law of rape accomplished or attempted by fraud, the court in its charge uses the following language: "Fraud must consist in the use of some stratagem, as an attempt to have carnal connection with a woman when she is asleep." In this case, if the defendant committed burglary with the intent to commit the offense of rape, it is clear that he did not intend to accomplish the rape by either force or threats, for neither of these means were used or attempted to be used by him.

The evidence is that he assaulted the woman when she was asleep, and while she was in that condition attempted to have carnal connection with her, but when she awoke he desisted

from any further effort to gratify his lust upon her. It was the opinion of the learned trial judge, as expressed in his charge to the jury, that an attempt to have carnal knowledge of a woman when she is asleep *per se* constitutes *fraud*, within the meaning of the statute upon this subject. In this opinion we think the trial judge erred. The statute declares that the "fraud" must consist in the use of some stratagem *by which the woman is induced to believe that the offender is her husband,*" etc. (Penal Code, Art. 531.) It no where declares that it is "fraud" to have, or to attempt to have, carnal knowledge with a woman when she is asleep, and, as the word "fraud" used in this statute is specifically defined therein, we must be limited, in ascertaining the meaning of the word, to its statutory definition.

If a man should have, or attempt to have, carnal knowledge of a married woman while she was asleep, under such circumstances as induced her to believe he was her husband, it would be such fraud as the statute contemplates. Thus, if he should represent himself as her husband, and induce her to believe that he was her husband, and then, while she was asleep, or even while she was awake, have or attempt to have carnal knowledge of her, it would be fraud within the meaning of the statute. But the single fact that the woman was asleep when the act of carnal knowledge was committed, or attempted, does not constitute fraud. The woman must be married, and the stratagem used to have carnal knowledge of her must be such as induces her to believe that the offender is her husband. This portion of the statute concerning the use of stratagem protects married women only. In the case we are considering, there is no evidence that the woman assaulted was a married woman.

We are of the opinion that the charge of the court defining fraud is manifestly and materially erroneous, and that this error produced the conviction of the defendant. Wherefore the judgment is reversed and the cause is remanded.

*Reversed and remanded.*